UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON ELLIOTT BOWEN,

    Plaintiff,

v.                                                                  Case No. 1:21-cv-563
                                                                            Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claim for supplement security income (SSI).

On April 25, 2019, plaintiff filed an application for SSI alleging a disability onset date of October 2, 2009. PageID.43. Plaintiff identified his disabling conditions as anxiety disorder, bipolar disorder, depression, peripheral neuropathy, knee problem, high blood pressure, acid reflux, and necrotizing fasciitis. PageID.258. Plaintiff completed the eighth grade and has no past relevant work. PageID.62, 259. An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 29, 2020. PageID.43-64. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

I. **LEGAL STANDARD**

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

3

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since his application date of April 25, 2019. PageID.45. At the second step, the ALJ found that plaintiff had severe impairments of: mild cervical degenerative disc disease; osteoarthritis; peripheral neuropathy; obesity; bipolar / depressive disorder; an anxiety disorder; and obsessive-compulsive personality disorder. PageID.46. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.47.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: occasional ladders, rope, and scaffold climbing; frequent ramp and stair climbing; frequent balancing, stooping, kneeling, crouching, and crawling; avoid concentrated exposure to extremes of wetness; avoid even moderate exposure to hazards, which would be the operation of dangerous moving machinery and unprotected heights; understanding, remembering, and carrying out simple, routine, and repetitive tasks; able to focus on and complete simple tasks in a timely fashion; and occasional general public interaction.

PageID.50-51. The ALJ also found that plaintiff has no past relevant work. PageID.62.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.62-63. Specifically, the ALJ found

that plaintiff could perform the requirements of light, unskilled work in the national economy such as a bench assembler (125,000 positions), a machine tender (110,000 positions), and an inspector (80,000 positions).  PageID.63.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 25, 2019 (the date he filed the application) through September 29, 2020 (the date of the decision).  PageID.63-64.

### III.    DISCUSSION

Plaintiff raises a single error on appeal.

**The ALJ erred in finding the mental residual functional capacity opinion of treating psychiatrist Ann Crabb, Ph.D., not persuasive. The ALJ's analysis was not based on substantial evidence of record.**

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. § 416.920c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  *See* 20 C.F.R. § 416.920c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section,

5

as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. §416.920c(b)(2).[1]  If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 416.920c(b)(3) (internal citations omitted).

The new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 416.920c(b)(1).  Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

As one court observed, "[t]hese new regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources." *Hardy v. Commissioner of Social Security*, 554 F. Supp. 3d. 900, 906 (E.D. Mich. 2021).

---

[1] The regulations explain "supportability" as follows:  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  The regulations explain "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

Nevertheless, the new regulations set forth a minimum level of articulation for a reviewing court.

*Id.*

> The ALJ addressed Dr. Crabb's two opinions as follows:
>
> In May 2019, Ann Crabb, Ph.D., a psychologist and one of the claimant's medical sources, opined the claimant has extreme limitations in his abilities to recognize a mistake and correct it, identify and solve problems, sequence multistep activities, ignore or avoid distractions, work at an appropriate and consistent pace or complete tasks timely, set realistic goals, manage psychologically based symptoms, and work a full day without needing more or longer rest periods during the day (Ex. 7F/2-3). She assessed the claimant has marked limitation in his abilities to follow one to two step instructions to carry out a task, initiate and perform a task he knows how to do, sustain an ordinary routine and regular attendance at work, and cooperate with others or ask for help when needed (Ex. 7F/2-4). She stated the claimant has moderate limitations in his abilities to use reason and judgment to make work-related decisions, adapt to changes, and respond to requests, suggestions, criticism, correction, and challenges (Ex. 7F/2-4). She opined the claimant has mild limitations in his abilities to work close to or with others without interrupting or distracting them, make plans independently, and keep social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness (Ex. 7F/3-4). She assessed the claimant has no limitations in his abilities to maintain appropriate personal hygiene and attire, be aware of normal hazards and take appropriate precautions, distinguish between acceptable and unacceptable work, handle conflicts with others, and understand and respond to social cues (Ex. 7F/3-4).
>
> In July 2020, Dr. Crabb assessed the claimant has extreme limitations in sequencing multistep instructions and ignoring or avoiding distractions with marked limitations in following one or two step instructions to carry out a task, recognizing a mistake and correcting it or identifying and solving problems, using reason and judgment to make work related judgments, working at an appropriate and consistent pace or completing tasks timely, and managing psychologically based symptoms (Ex. 20F/2-4). She indicated he has constant flight of ideas and thoughts that severely restricts his ability to concentrate and carry out instruction with significant dysfunction in his ability to sustain attention (Ex. 20F/3). Dr. Crabb opined has moderate limitations in working close to or with others without interrupting or distracting them, sustaining an ordinary routine and regular attendance, working a full day without needing more or longer rest periods, setting realistic goals, being aware of normal hazards and taking appropriate precautions, handling conflicts with others, understanding and responding to social cues, and responding to requests, suggests, criticism, correction, and challenges as well as keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspicious ness [sic] (Ex. 20F/3-4). She noted he had lapses of high anger episodes, although she reported he is mostly amicable (Ex. 20F/4).

> I considered the May 2019 and July 2020 assessments of Dr. Crabb. She has specialized experience and training in the field of psychology, and she has participated in the claimant's care. However, her assessments are not supported by her own examination findings. As demonstrated above, during evaluations with Dr. Crabb, the claimant presented with some positive findings (*See, generally*, Ex 5F; 8F; 12F-13F: 18F; and 21F). However, she generally observed that he presented as cooperative with unremarkable findings with regard to alertness, orientation, psychomotor activity, dress, hygiene, eye contact, speech, thought processes, cognition, judgment, and insight (*See, generally*, Ex. 5F; 12F-13F; 18F; and 21F). In December 2018, Dr. Crabb remarked that testing demonstrated only mildly impaired cognition (Ex. 12F/88). Dr. Crabb's assessments are also not consistent with the medical evidence of record as a whole. Dr. Hussain's treatment notes document findings that are generally consistent with those of Dr. Crabb (Ex. 5F; 12F-13F; 18F; and 21F). The medical evidence of record shows the claimant, on multiple occasions, had unremarkable findings with regard to mood and/or affect (Ex. 5F/35; 8F/40; 10F/24; 12F/75, 106, 124; 13F/6; 17F/40; and 18F/6). There is no evidence of ongoing suicidal ideation, homicidal ideation, psychosis, or self-harmful behavior (*See, generally*, Ex. 1F-23F). In February, March, and April 2019, the claimant had normal thought content, cognition and memory (Ex. 10F/14-24). Dr. Crabb's assessments are inconsistent with the longitudinal treatment record, which documents improvement from relatively conservative treatment consisting only of medication and outpatient counseling (*See, generally*, Ex. 1F-23F). Accordingly, I find Dr. Crabb's assessments are not persuasive.

PageID.60-61.

Plaintiff contends that "[u]pon review of the extensive mental health evidence of record, it becomes apparent that the ALJ either failed to consider or failed to properly characterize the substantial evidence which supports Dr. Crabb's opinions." Plaintiff's Brief (ECF No. 14, PageID.1444). This being said, the gist of plaintiff's claim is that the ALJ's RFC is unsupported because of the manner in which it characterized the doctor's opinions regarding his ability to carry out simple tasks, focus on simple tasks, and interact with people:

> Plaintiff's RFC is the most he can still do despite his limitations and is determined by assessing all the relevant evidence. 20 C.F.R. § 416.945(a)(1). RFC is "an assessment of an individual's ability to do sustained work related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week." Social Security Ruling ("SSR") 96-8p. The RFC must identify the individual's functional

8

> limitations and assess their work related abilities on a function-by-function basis. *Id*.
>
> Here, at bar, the ALJ determined Plaintiff has the mental RFC to understand, remember can carry out simple, routine repetitive tasks; the ability to focus and complete simple tasks in a timely fashion; and occasional public interaction. (PageID.51). However, this determination is completely unsupported by substantial evidence because the ALJ improperly rejected the opinions from treating psychologist Dr. Crabb who supported her own opinion and whose opinions are highly consistent with the record.

Plaintiff's Brief at PageID.1429-1430.

To support his claim, plaintiff recounts portions of the medical record commencing on June 22, 2017, when Brandie Yancy, PA, stated that plaintiff has been experiencing depression following sobriety of six months, and ending on May 11, 2020, with Dr. Crabb noting that "none of the emotional instability seen in April (2020), which may have been from the addition of Klonopin."  *Id*. at PageID.1433-1443; *see* PageID.943, 1322.

The Court has reviewed the ALJ's decision, the hearing testimony, and the parties' briefs. The medical record in this case consists of about 1,000 pages.  PageID.328-1407.  The ALJ's decision set out a comprehensive summary of plaintiff's medical records while evaluating his claim.  *See* PageID.46-62.  While plaintiff disagrees with the ALJ's evaluation of Dr. Crabb's opinions, the Court concludes that the ALJ's evaluation is supported by substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154.  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision. *Willbanks*, 847 F.2d at 303. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

Plaintiff seeks to have this Court review portions of the medical record, whereby "the ALJ's errors become apparent." PageID.1443. In essence, plaintiff wants this Court to review the medical record and evaluate his functioning to reach the conclusion that, "the ALJ either ignored or failed to properly characterize the detailed evidence regarding the claimant's actual level of day to day functioning." PageID.1443-1444. The Court does not perform a de novo review of the record or weigh the evidence. *See Brainard*, 889 F.2d at 681. *See, e.g., Arnett v. Commissioner of Social Security*, 76 Fed. Appx. 713, 716 (6th Cir. 2003) ("It is apparent that counsel for [the claimant] wishes this court to engage in a de novo review of every aspect of every piece of the favorable, and less favorable, evidence presented to the Commissioner through the ALJ. This court, however, is not charged with conducting the kind of 'super review' requested.").

Next, while plaintiff contends that "the ALJ failed to consider the consistency between Dr. Crabb's two opinions and the records from Dr. Hussain, as well as their records' overall consistency with the observations and notations from the Claimant's primary care medical providers" (PageID.1444), he does not develop the record or an argument to support this claim.

Finally, plaintiff contends that ALJ's RFC is not supported by substantial evidence with respect to understanding, remembering, and carrying out simple, routine, and repetitive tasks; the ability to focus on and complete simple tasks in a timely fashion; and having occasional general public interaction. PageID.51, 1430. The Court notes that in reaching this determination, the ALJ relied on some of the opinions expressed by state agency non-examining consultant George Starrett, Ed.D. on January 10, 2020 (PageID.125-126, 129-131)[2], *e.g.*, "that the claimant has limitations in interacting with the public and that he is capable of simple, nonskilled tasks is consistent with the objective medical evidence of record." PageID.59. In this regard, the ALJ

---

[2] The Court notes that Dr. Starrett provided a disability determination explanation at the reconsideration level. PageID.119.

found that "[t]he longitudinal treatment record is also consistent with Dr. Starrett's assessment, such that it shows improvement with relatively conservative treatment." *Id*. For all of these reasons, this claim of error is denied.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated: September 22, 2022         Ray Kent
                                  RAY KENT
                                  United States Magistrate Judge